IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EDVIN CHAVARRIA,
    *Plaintiff*,

v.

PIPINOS, INC., et al,
    *Defendants*

Civil Action No.
23-CV-2907-ABA

**MEMORANDUM OPINION**

Edvin Chavarria filed this action against his former employer Pipinos, Inc., and its owner, Filippos Hatzidakis (collectively, "Defendants"), pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*., ("FLSA") and analogous state law. *See* ECF No. 1 ("Compl."). The parties have settled their dispute and request Court approval of their settlement agreement. *See* ECF No. 16 ("Jt. Mot."). Because the proposed settlement terms are fair and reasonable, and resolve a *bona fide* dispute between the parties, and because the requested award of attorneys' fees and costs is reasonable, the motion will be granted.

**I.    BACKGROUND**

Mr. Chavarria was employed as a cook in Defendants' restaurant, Prino's Mediterranean Grill, for over three years. Compl ¶¶ 9, 10. He filed this action in October 2023, alleging that Defendants failed to pay him overtime wages in violation of the FLSA, the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.*, and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq.*, *see* Compl. ¶¶ 21, 23, 47, 53, 59, which Defendants denied. *See e.g.*, ECF No. 6 ¶¶ 10, 21, 37, 45. The parties thereafter engaged in informal discovery and "several months" of settlement discussions. Jt. Mot at 1. They

eventually reached a compromise and filed the now-pending motion in March 2024, along with a copy of their proposed settlement agreement. *See* ECF No. 16-1 (the "Agreement").

The Agreement provides that, subject to the Court's approval, Defendants will pay $22,000, distributed in two installments of $7,333.33 and a final installment of $7,333.34. *Id*. ¶ 1. With certain exceptions, including claims "that cannot be waived by law," the parties have consented to "forever discharge[]" each other from "any and all claims, causes of action, suits, damages. . . and liabilities of every kind or nature whatsoever." *Id*. ¶ 3. They purport to agree to keep the terms of the settlement negotiation confidential. *Id*. ¶ 5. They agree to refrain from making disparaging statements about each other. *Id*. ¶ 7. Mr. Chavarria's counsel will receive $8,365.50 in attorneys' fees and $634.50 in costs from the gross settlement amount. Jt. Mot. at 4-6.

## II.    DISCUSSION

Congress enacted the FLSA to protect workers from "substandard wages and excessive hours" that resulted from unequal bargaining power between employers and employees*. See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). To that end, the statute's provisions generally cannot be waived or modified by contract or settlement. *See id*. at 707. Settlement "is not entirely forbidden in FLSA cases," however, as court-approved agreements are an exception to this rule. *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 476 (D. Md. 2010); *see also* 29 U.S.C. § 216(b). But such settlements must "reflect[] a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Saman v. LBDP, Inc*., DKC–12–cv–1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

The Fourth Circuit has not established a definitive rubric for determining the propriety of an FLSA settlement, but district courts in this circuit have adopted the considerations set forth in the Eleventh Circuit's *Lynn's Food Stores* case. *See*, *e.g.*, *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 407-08 (D. Md. 2014). Under this approach, the Court determines whether a settlement provides "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores*, 679 F.2d at 1355.

Courts first confirm that there are FLSA issues "actually in dispute," *id.* at 1354, by reviewing the pleadings and "the representations and recitals in the proposed settlement agreement." *Duprey*, 30 F. Supp. 3d at 408 (citing *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08–1310, 2009 WL 3094955, at *16-17 (E.D. Va. Sept. 28, 2009)). Next, courts assess the fairness and reasonableness of a settlement itself, which involves considering all relevant factors, including:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiff[]; (5) the opinions of class counsel . . . ; and (6) the probability of plaintiff['s] success on the merits and the amount of the settlement in relation to the potential recovery.

*Yanes v. ACCEL Heating & Cooling, LLC*, No. PX–16–cv–2573, 2017 WL 915006, at *2 (D. Md. Mar. 8, 2017) (quoting *Lomascolo*, 2009 WL 3094955, at *10). These factors are usually satisfied if there is an "assurance of an adversarial context," and the employee is "represented by an attorney who can protect [his or her] rights under the statute." *Duprey*, 30 F. Supp. 3d at 408 (quoting *Lynn's Food Stores*, 679 F.2d at 1354).

### A. *Bona Fide* Dispute

A review of the relevant pleadings and filings of this case supports the parties' assertion that a *bona fide* dispute exists. *See* Jt. Mot. at 3. Mr. Chavarria contends that he was not compensated overtime pay. *See* Compl ¶¶ 21, 23, 47, 53, 59. Defendants dispute his claims and overtime calculations. *See e.g.*, ECF No. 6 ¶¶ 10, 21, 37, 45. There is a *bona fide* dispute under the FLSA. *See Duprey*, 30 F. Supp. 3d at 408 (finding *bona fide* dispute based on litigants' disagreement over plaintiff's "rate of pay and hours worked").

### B. Fairness and Reasonableness of Settlement Terms

Having reviewed the parties' submissions and considered the relevant factors, the Court is satisfied that their proposed settlement represents a fair and reasonable compromise of their *bona fide* dispute. They confirm that informal discovery provided sufficient opportunity to obtain evidence and evaluate the strength of their respective arguments. Jt. Mot. at 3. The parties also represent that settlement at this stage of the proceedings is to their mutual advantage, and in alignment with their collective desire to avoid the time, expense, and uncertainty of further litigation. *Id.* at 4. There is no evidence that the Agreement is the product of fraud or collusion. *See Lomascolo*, 2009 WL 3094955, at *12 ("There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary."). Mr. Chavarria is represented by experienced and competent counsel, who avers to have litigated "hundreds of similar matters in Maryland and the District of Columbia" and endorses the proposed settlement as fair and "very much in the interests of his client." Jt. Mot. at 4. Given the disputed material facts and risks of litigation, the Court is convinced that the settlement amount "reflects a reasonable compromise over issues actually in dispute." *Lomascolo*, 2009 WL 3094955, at *8.

Although general release language can render an FLSA settlement agreement

4

unreasonable, *see Duprey*, 30 F. Supp. 3d at 410 (citing *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1352 (M.D. Fla. 2010)), the parties' release in this case is appropriate under the circumstances. Where, as here, the "employee is compensated reasonably for the release executed, the settlement can be accepted" and the Court need not consider the "reasonableness of the settlement as to the non-FLSA claims." *Id*.

Nor does the Agreement language restricting disclosure of its terms render the proposed settlement unreasonable. Confidentiality clauses are generally "not permitted without compelling reasons." *Salamone v. Balt. Diamond Exch., Inc.*, No. JKB–14–cv–1507, 2014 WL 2930788, at *1 (D. Md. June 27, 2014) (citing *Carpenter v. Colonial Mgmt. Grp.*, LP, No. JKB–12–cv–686, 2012 WL 2992490, at *2 (D. Md. July 19, 2012)). Here, however, the Agreement "is filed as a matter of public record," such that the confidentiality clause "is of no practical effect." *Id*.

Upon consideration of the relevant factors, the Court finds the settlement to be fair and reasonable.

C. **Attorneys' Fees**

The Court also must evaluate the reasonableness of attorneys' fees and costs awarded in connection with the settlement. *See, e.g.*, *Lopez v. XTEL Const. Grp., LLC*, 838 F. Supp. 2d 346, 348 (D. Md. 2012). Mr. Chavarria's counsel seeks $8,365.50 in attorneys' fees and costs. *See* Jt. Mot. 4-5. This sum is reasonable.

The Court determines the reasonableness of attorneys' fees using "the principles of the traditional lodestar method as a guide." *Lane*, 2011 WL 3880427, at *3 (quoting *Poulin v. General Dynamics Shared Resources, Inc.*, No. 3:09–cv–00058, 2010 WL 1813497, at *1 (W.D. Va. May 5, 2010)). The lodestar amount is determined by multiplying the number of hours reasonably expended by a reasonable hourly rate. *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). Under the lodestar approach, an hourly rate "is reasonable if it is

'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Duprey*, 30 F. Supp. 3d at 412 (quoting *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984)). This Court maintains rough guidelines regarding appropriate hourly rates in Appendix B to its Local Rules, although higher rates can be reasonable. *See* U.S. District Court, District of Maryland, Local Rules (D. Md. Jul. 2023).

The Fourth Circuit addressed specific factors district courts should consider in determining the reasonableness of attorneys' fees in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978):

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber*, 577 F.2d at 226 n.28.

Mr. Chavarria's counsel state that Justin Zelikovitz, a member of the bar since 2008, spent 9.5 hours on this matter. His co-counsel, Jonathan Tucker, a member of the bar since 2009, spent 6.7 hours on this case. The firm's paralegal staff also expended approximately 10 hours of work. The proposed hourly rates of approximately $425 for Mr. Zelikovitz and $425 for Mr. Tucker are, according to counsel, "far, far below the prevailing rates for similar work in Washington, DC," where their firm is located. Jt. Mot. at 5. These rates are also within the presumptively reasonable rates outlined by this jurisdiction's Local Rules. *See Saman*, 2013 WL 2949047, at *7 ("[A]ny request for attorneys' fees must comport with the requirements and

comport with the requirements and guidance set forth in Local Rule 109 and Appendix B to the Local Rules."). The hours expended, which represent pre-suit investigation and preparation, and informal discovery, are likewise reasonable. Accordingly, the requested total of $8,400 in attorney's fees is approved.

Counsel also requests to be reimbursed $634.50 in expenses. "Costs that may be charged include 'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.'" *Trs. of the Nat'l Automatic Sprinkler Indus. Welfare Fund v. Westland Fire Prot., Inc.*, No. 12-cv-1421-DKC, 2014 WL 824121, at *3 (D. Md. Feb. 28, 2014) (quoting *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988)). These expenses, both reasonable and typical, shall be approved.

Having considered the relevant factors, the Court concludes the standard for approval of the settlement is satisfied. The proposed settlement is a fair and reasonable resolution of a *bona fide* dispute. The attorneys' fees and costs are also fair and reasonable. The settlement will be approved, and the requested fees will be awarded in full.

## CONCLUSION

For the reasons stated above, the parties' joint motion for final approval of the settlement will be granted. A separate order will follow.

Date: May 21, 2024                                        /s/
                                                         Adam B. Abelson
                                                         United States Magistrate Judge